IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,            :
                                     :
      Plaintiff,               :
                                     :
    v.                          :            Criminal Action No. 24-26-JLH[1]
                                     :
SHABAZZ BARLOW,                      :
                                     :
      Defendant.               :

## SHABAZZ BARLOW SENTENCING MEMORANDUM

### I.  INTRODUCTION

Shabazz Barlow, through undersigned counsel, hereby submits this Sentencing Memorandum in support of his sentencing hearing. For the reasons set forth below, Mr. Barlow seeks a sentence of twelve months and one day. This sentence is sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. 3553(a).

### II.  PERSONAL HISTORY AND BACKGROUND

Shabazz Barlow is a relatively young man who has struggled with substance misuse and poor decision making for much of his youth and early adulthood. However, his record demonstrates a person without a violent history who had already turned the corner in his personal conduct even before his arrest in this matter.

Shabazz Barlow was born to his parents, Mary Barlow (58 years old) and Karl Hannah (deceased). Presentence Report (hereinafter PSR) at ¶ 99. He was born on December 28, 1994, in

---

[1] As always, the defense has filed an Attachment A under seal for the court's review.

Riverside, California. *Id.* Mrs. Barlow now resides in Frederica. *Id*. His father passed away in April of 2023 due to kidney failure. PSR at ¶ 111.

Mr. Barlow's parents had been together for 37 years prior to his passing. *Id.* Mr. Barlow has six siblings ages 10 to 47. PSR at ¶ 103. While the family was loving, it was not without its challenges. Mr. Barlow spent many of his early years living with his grandmother due to his parents' incarceration. PSR at ¶¶ 100 -101. Despite this fact, Mr. Barlow does not describe his childhood negatively.

Mr. Barlow has two daughters that he co-parents with Karlee Muso. PSR at ¶ 105. The two began a relationship more than a decade ago in high school. *Id.* Their two daughters are age 10 and eight. *Id.* They presently reside with Ms. Muso. *Id.*

Mr. Barlow did not struggle in school, either academically or with respect to his behavior. However, he was not motivated and eventually dropped out.[2] Despite not finishing high school, Mr. Barlow was worked regularly going back to his teens. PSR at ¶¶ 125-130. Obtaining employment has never been an issue for Mr. Barlow, however, his substance issues have sometimes impacted his ability to maintain employment.

Mr. Barlow is remorseful for his conduct. The consequences of his actions have hurt not only him but those that he loves as well, especially his daughters. PSR at ¶ 108. Mr. Barlow has been forced to confront his poor choices. He similarly has been forced to recognize that his life must be different moving forward in order to prevent far more serious consequences from befalling him in the future.

---

[2] Mr. Barlow did obtain his GED at the Federal Detention Center in Philadelphia. Exhibit B.

III.    **SENTENCING GUIDLINE CALCULATIONS**

The United States Probation Office for the District of Delaware calculated Mr. Barlow's advisory Sentencing Guidelines range as 18 months to 24 months based on a Total Offense Level of 13 and a Criminal History of III. PSR at ¶ 58. This calculation is based on a starting offense level of 14. *Id.* at ¶ 50. The Probation Office then applied a two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) based on the belief that Mr. Barlow's offense and relevant conduct involved 3 to 7 firearms. PSR at ¶ 51.  For the reasons explained below, the two-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(1)(A) is inapplicable to Mr. Barlow.

**A.  Mr. Barlow Did Not Possess Three or More Firearms.**

The PSR alleges that Mr. Barlow possessed at least three firearms. It suggests that in addition to his admitted conduct, on at least two other occasions he possessed a firearm. The PSR suggests that the enhancement applies based on conduct other than Mr. Barlow's admitted acts. Thus, the enhancement is only applicable if these other acts qualify as "relevant conduct".

Relevant conduct is defined in § 1B1.3 of the U.S.S.G. The Guidelines explain in § 1B1.3(a) that relevant conduct is:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

> (2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

3

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions.

§ 1B1.3(a). *United States v. Kulick*, 629 F.3d 165, 170 (3d Cir. 2010).

The United States Court of Appeals for the Third Circuit has determined that in order to know which of the above criteria should be used to determine if an act is relevant conduct, courts should determine if "the offense of conviction is a groupable offense." *Kulick*, 629 F.3d at 170 (cleaned up). Courts must apply § 1B1.3(a)(2) if it is a groupable offense. *Id.* Because a firearm case such as this is subject to grouping, § 1B1.3(a)(2) is the test. *See* USSG § 3D1.2.

To qualify as relevant conduct under § 1B1.3(a)(2), the conduct must meet three conditions: "(1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) ... ; (2) grouping would be appropriate under § 3D1.2(d); and (3) it must have been 'part of the same course of conduct or common scheme or plan.' " *United States v. Black*mon, 557 F.3d 113, 123 (3d Cir. 2009) (omission in original) (quoting U.S.S.G. § 1B1.3(a)(2)).

In this case, the Court need only address condition three, is the conduct in question part of the same course of conduct or common scheme or plan. "In order to determine whether offenses are part of the same course of conduct, and thus relevant conduct, the Guidelines' commentary provides a three-prong test. The sentencing court must look to: (1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses." *Kulick*, 629 F.3d at 171 (quoting § 1B1.3, cmt. n. 9(B)) (cleaned up). It should be noted that "the test is a sliding scale", so if one factor is absent, it is still possible to find relevant conduct if another factor is strong enough. *Id*.

The PSR suggests that there are four incidents that could demonstrate possession of the two additional firearms required to satisfy the three possessed firearms the enhancement calls for.

However, the Court need not go through the analysis discussed above for three of the four incidents. This is because three of the alleged possessions never occurred.

The PSR first alleges that, in addition to the firearm that was part of the plea, Mr. Barlow also possessed an "Uzi". PSR at ¶ 51. This allegation arises out of the puffery Mr. Barlow engaged in when he met with the undercover investigator (hereinafter UC). The PSR states that Mr. Barlow told "the UC he had an "Uzi" stolen from him". *Id.* Mr. Barlow made the comment in the context of explaining to the UC why he was being so cautious. There is no evidence that Mr. Barlow ever owned an Uzi. The government can produce no pictures, witnesses, or any other support for the claim that Mr. Barlow owned an Uzi outside of his single false statement made to influence the UC. This not a point of debate, the PSR provides nothing else to support that this possession occurred but this false statement.[3]

In addition, the PSR references that Mr. Barlow and the UC had a phone conversation about an AR-style assault rifle. *Id*. First, in the recorded call, Mr. Barlow never claimed to possess or have access to any firearm, let alone an AR-style rifle. Second, Mr. Barlow's allusion to having heard about something was in response to a question from the UC. However, Mr. Barlow was vague and provided no specifics. Lastly, he never followed up with the UC about his request. There is nothing in the recording that implies Mr. Barlow had possessed another firearm.

It is quite significant that this is not the only call between the UC and Mr. Barlow after having met on March 15, 2023. The UC pursued Mr. Barlow, unsuccessfully, to get him to engage in illegally activity. In fact, in the beginning of this particular call, the UC says, "I just haven't

---

[3] The PSR also fails to indicate when this alleged possession occurred or in what context. Mr. Barlow was legally allowed to possess firearms until 2018. Thus, even if this possession had occurred it cannot be considered relevant conduct given how little is known of the incident.

heard nothing from you man…", referring to Mr. Barlow. *Id*. at ¶ 31. That is because Mr. Barlow was not contacting the UC. The UC had also called Mr. Barlow on March 30, 2024. *Id.* at ¶ 29. There the UC admonishes Mr. Barlow for not calling him back as he expected. *Id.* This fact demonstrates that the UC is instigating these discussions about firearms not Mr. Barlow. It also shows that Mr. Barlow is not interested, as he is not responding. None the less, the PSR suggests, without support, that the Mr. Barlow possessed a gun because of the April 2, 2024 recording.

The PSR also alleges that Mr. Barlow has a discussion with another individual about a firearm. *Id.* at ¶ 51. The individual Mr. Barlow is communicating with had taken a firearm from Mr. Barlow. *Id* at ¶ 41. The firearm that was taken is the same firearm referenced in other sections of the PSR. *Id.* at ¶¶ 13-16 and 78. The individual Mr. Barlow was communicating with was the cousin mentioned in PSR ¶ 16. Mr. Barlow wanted to be reimbursed for the theft of a firearm. To that end he attempts to make this individual believe he can have his own missing property returned if Mr. Barlow is compensated for the firearm this individual stole. *Id* at ¶ 41. The Probation Office used this string of communication to allege that Mr. Barlow was in possession of a firearm. That claim was made even though, again, there were not pictures or witnesses to support the suggestion that Mr. Barlow possessed a firearm. Furthermore, Mr. Barlow does not even claim to have possessed the firearm. *Id.* Mr. Barlow's comments were merely an attempt to get reimbursed for the theft.

Finally, the PSR notes that Mr. Barlow possessed a firearm as a result of a straw purchase. *Id*. at ¶ 51. This event is also referenced elsewhere in the PSR. *Id.* at ¶ 78. This is the only one of the four allegations of possession that is true. Even though Mr. Barlow was indeed convicted of possession, this possession does not qualify as relevant conduct in the instant case. That is because Mr. Barlow's possession occurred in February of 2021, more than two full years prior to the

offense conduct in the instant case. In the instant case, Mr. Barlow possessed the firearm on March 15, 2023. *Id.* at ¶ 51. Mr. Barlow had acquired the firearm earlier that same day.

In evaluating the prior possession under the three-prong test (temporal proximity; similarity; and regularity) discussed above, the Mr. Barlow's possession fails to qualify as relevant conduct. Even assuming that the conduct is the same, the act does not satisfy the regularity and temporal proximity prongs. Here there are only two incidents of possession over a more than two-year span. This is far short of regular conduct. *See United States v. Amerson,* 886 F.3d 568, 574 (6th Cir. 2018) (stating, "regularity is completely absent where the government shows only one other offense" (internal citations omitted)).

Most importantly, the gap of more than two years between incidents severs any connection that could lead to a reasonable belief that the behaviors are the same course of conduct. That span of time in between acts attenuates any possible connection. The Third Circuit has already ruled similarly. That Court referred to two acts separated by over two years as "temporally remote" from each other. *Kulick*, 629 F.3d at 172. The Court went on two explain that such a weakness in temporal proximity requires an even stronger showing in the other two prongs to find that the conduct was relevant. The Court further explained that they require a "strong showing of similarity, even where the temporal proximity was strong." *Kulick*, 629 F.3d at 172. Thus, where the acts temporal proximity is weak and the regularity is "absent", even if the similarity is strong, that would still not be enough.

Because Mr. Barlow did not possess three firearms the enhancement pursuant to § 2K2.1(b)(1)(A) is inapplicable. As a result, Mr. Barlow's Total Offense Level is 12 with a Criminal History of III and a corresponding sentencing range of 15-21 months.

IV.    **DISCUSSION**

Mr. Barlow is young man who was slow to mature but is now moving in the right direction. Mr. Barlow does not seek to make any excuses for his conduct. Rather, he seeks that the Court see his actions in context and the forward direction his life was already moving in prior to his arrest in this case.

To accomplish this, we began by examining Mr. Barlow's prior convictions. His first conviction was for possession of drug paraphernalia related to marijuana in when he was the age of 19. An act that is no longer criminal in the state of Delaware. Mr. Barlow's most second conviction occurred when he was 23 years old. That conviction was for possession of a deadly weapon and drugs. However, it is important to know that Mr. Barlow was in legal possession of the firearm at the time and had it stored in accordance with the law. Also, the drug he possessed was a small amount of marijuana. Under different circumstances, Mr. Barlow would have paid a civil penalty only for the marijuana possession. Mr. Barlow's sin was that he possessed the two together. That was his only transgression in that matter.

Mr. Barlow's most recent conviction was possession of a firearm by a prohibited person. Though his conviction was in January of 2024, the act occurred back in February 2021. Three years before Mr. Barlow's arrest in this case.

In examining Mr. Barlow record, the most prominent aspect of it, is it is nonviolent. This is true, not only with respect to the Guidelines, but in the general sense of nonviolent as well. Another aspect is Mr. Barlow's youthful with respect to his first to convictions and the fact that his first conviction is for conduct no longer criminalized and his second is for conduct that, if not done simultaneously, would not have been criminal.

8

The last prominent feature of Mr. Barlow's record is the fact that he has already spent more time in prison in the instant case than he had for all of his prior offenses combined. Mr. Barlow received probationary sentences in the three convictions discussed and a fine in a fourth case.

Another aspect that cannot be discounted is the fact that Mr. Barlow committed the instant offense in March of 2023. He was not arrested until February 20, 2024. He remained free in the instant case for almost a year.[4] This is despite the fact that law enforcement knew who he was. It is clear that law enforcement did not see Mr. Barlow as such a safety issue that he could not remain free for nearly a year before he was arrested. It is no less significant that during this time there are no allegations that Mr. Barlow committed any offenses. This is true despite the best efforts of the UC to lure him into unlawful conduct as discussed above.

Mr. Barlow's desire to change his life has been accelerated by his time at the Federal Detention Center in Philadelphia. Mr. Barlow has not only felt the loss of his freedom to an extent he had not previously known, he has also felt the weight of what his imprisonment has done to others. While he has been burdened by the impact his imprisonment has had on his mother and Ms. Muso, that burden is nothing compared to what he has felt knowing how his daughters have been hurt. This has motivated Mr. Barlow to continue on a positive path.

Mr. Barlow is commitment to not repeating his past offenses. This can be seen not only in his rejection of the UC's efforts to have him engage in more misconduct prior to his arrest, but also his behavior since that time. Specifically, Mr. Barlow's efforts in obtaining his GED. Mr. Barlow was awarded his GED on June 18, 2024, after completing all the testing requirements in four months. Exhibit B.

---

[4] Mr. Barlow did spend time in custody, in the state, in relation to his last conviction.

Mr. Barlow's poor decision making has largely been driven drug use. While Mr. Barlow has not suffered from substance misuse to the extent that some others have, he none the less has gone through periods of dependence. More importantly, his use has also put him around people and in places that have impacted his choices negatively. PSR at ¶¶ 109 and 112. Mr. Barlow intends to seek treatment to address this illness and place himself on more solid footing moving forward.

Mr. Barlow is a nonviolent offender who has never received a prison before. He also went a period of nearly a year without committing a crime after this instant offense despite pressure to do so by the UC. While Mr. Barlow understands there is a penalty to be paid, that requirement is satisfied by a sentence of 12 months and one day.

## V.    CONCLUSION

For the foregoing reasons, and any others that should occur to the Court, Mr. Barlow respectfully requests a sentence of twelve months and one day followed by a period of supervised release. He submits that such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

Respectfully submitted,

ELENI KOUSOULIS
Federal Public Defender

Dated: August 28, 2024                  By:  /s/ David L. Pugh
                                        DAVID L. PUGH, ESQUIRE
                                        Office of the Federal Public Defender
                                        District of Delaware
                                        800 King Street, Suite 200
                                        Wilmington, DE  19801
                                        (302) 573-6010

                                        Attorney for Shabazz Barlow

10