## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,     )

                        )

      v.                )     Case. No. 1:24-CR-26-1 (JLH)

                        )

SHABAZZ BARLOW,             )

                        )

      Defendant.     )

### THE UNITED STATES' SENTENCING MEMORANDUM

Shabazz Barlow, a convicted felon, sold an AR-15-style firearm to an undercover Delaware State Trooper. This offense was the latest in a series of a drug and gun offenses committed by Barlow. And in and around the time of the instant offense, the defendant made clear that he possessed and was prepared to procure additional firearms for sale. Because Barlow's relevant conduct involves three or more firearms, the Court should apply a two-level enhancement pursuant to USSG § 2K2.1(b)(1)(A), consistent with the Probation Office's assessment. With that enhancement, Barlow's sentencing guidelines range is 18-24 months.

The government respectfully requests a top of the guidelines range sentence of 24 months' imprisonment to reflect the seriousness and brazenness of the offense. That request is sufficient, but not greater than necessary, to serve the purposes of sentencing demanded by 18 U.S.C. § 3553(a).[1]

---

[1] As always, the government attached Attachment A to this sentencing memorandum.

**I.**    **The Court should apply the two-level enhancement pursuant to § 2K1.2(b)(1)(A) as Barlow possessed more than 3 firearms during the same course of conduct as the instant offense**

Pursuant to USSG § 2K2.1(b)(1)(A), a defendant's base offense level should be increased by 2 levels "if the offense involved three or more firearms." According to Application Note 5 of § 2K2.1, the Court is instructed to "count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed, including any firearm that a defendant obtained or attempted to obtain by making a false statement to a licensed dealer."   USSG § 2K2.1, comment. (n.5(B)(ii)).

As detailed below, Barlow's relevant conduct dictates that his "offense involved three or more firearms."   USSG § 2K2.1(b)(1).   Pursuant to USSG § 1B1.3(a)(1)(A), relevant conduct is determined based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant."  *Id.*   In the case of a jointly undertaken criminal activity, relevant conduct also includes all acts and omissions of others that were:

(i)    within the scope of the jointly undertaken criminal activity,
(ii)   in furtherance of that criminal activity, and
(iii)  reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*See* USSG § 1B1.3(a)(1)(B); *United States v. Kulick*, 629 F.3d 165, 170 (3d Cir. 2010)

The parties agree that § 1B1.3(a)(2) governs this case.  *See* D.I. 23, Defendant's Sentencing Memorandum, pp. 4.  For conduct to qualify as relevant conduct under subsection (a)(2), three conditions must be met:

2

(1) it must be the type of conduct described in § 1B1.3(a)(1)(A) and (B) ("all acts and omissions committed . . . by the defendant");
(2) grouping would be appropriate under § 3D1.2(d); and
(3) it must have been "part of the same course of conduct or common scheme or plan" as the offense of conviction.

*United States v. Blackmon*, 557 F.3d 113, 123 (3d Cir. 2009) (ellipsis in original).

The parties further agree that the first two prongs of the *Blackmon* test are satisfied. *See* D.I. 23, Defendant's Sentencing Memorandum, pp. 4. Thus, the Court should focus on whether Barlow's conduct was "part of the same course of conduct or common scheme or plan." The commentary to § 1B1.3 describes the "same course of conduct" as broader than "common scheme or plan," and covers offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." USSG § 1B1.3, App. N. 5(B)(ii).

In determining whether offenses are sufficiently connected or related, the commentary directs courts to consider various factors, including "the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses." *Kulick*, 629 F.3d at 171. The Court need not find that all the factors weigh in favor of counting the offenses, but when one "factor is absent, a stronger presence of at least one of the other factors is required." *Id*.

Each of the factors required by § 1B1.3(a)(2) is present here.

*First*, the offenses at issue are identical. During the investigation, the ATF, as detailed in the PSR, identified at least three instances of possession, the acquisition of, or the sale of a firearm by Barlow. During the charged incident, Barlow delivered

3

an AR-15 to the undercover officer in March 2023.  PSR ¶ 19-28.  In concluding the sale, Barlow also told the undercover that he "c[a]me across sh*t like this all the time," and currently possessed an Uzi firearm ("*I'm not gonna hold you, *****s ran off with an uzi on me*").  PSR ¶ 27.

The defense contends that Barlow's statements were mere "puffery."  D.I. 23, pp. 5.  He is misguided.  Puffery is when a person exaggerates to self-promote.  *See Puffing*, Black's Law Dictionary (12th ed. 2024).  We need to look no further than Barlow's actions to see he was not exaggerating his abilities.  He sold an AR-15 to the undercover, discussed obtaining more firearms, and openly displayed firearms on social media.  Barlow's statement wasn't puffery, it was a confession.

Next, in the days after the sale, Barlow engaged in two recorded conversations with the undercover.  A plain reading of those conversations shows Barlow sought to obtain an additional firearm to sell to the undercover.  On March 30, Barlow stated, "*someone brought something to my attention but I gotta wait until he get around so I can holler at him*," indicating his intent to acquire a firearm to sell to the undercover.  PSR ¶ 29-30.  On April 2, Barlow then confirmed that his source acquired an AR-15-style firearm for Barlow to sell ("*Actually I Did! ... I did bro I did ... I think its an AR ... it's a little newer than the one I just (Unintelligible) you.*").  PSR ¶  31-32

Barlow's intent to obtain an additional firearm for the undercover is clear.  Whether he truly possessed the firearm is of no consequence.  Neither § 2K2.1(b)(1) nor § 1B1.3 demand actual possession of a firearm.  To the contrary, a plain reading includes relevant conduct, such as this, in which a defendant seeks to obtain a firearm

4

to resell.  *See* USSG § 1B1.3(1)(1)(B) (including as relevant conduct all acts "in furtherance of" criminal activity, "reasonably foreseeable," in connection with criminal activity, or which occurred in "preparation for" criminal activity).  Barlow's indication that he sought to obtain a firearm, and his confirmation days later that he could access one, were all statements in furtherance of, in preparation for, and reasonably foreseeable in connection with selling firearms.  He was seeking additional inventory and advertising his ability to acquire it to a customer, and his actions fall within the scope of relevant conduct.  *Id.*

Additionally, Barlow's social media puts his propensity to possess firearms on full display.  PSR ¶ 34-37.  On March 14, 2023, the day prior to the sale, Barlow possessed the AR-15 he sold to the undercover for a second time.  He posted photographs, with the serial number exposed, of the firearm Hovington straw purchased.  PSR ¶ 36.  Finally, Barlow detailed how he acquired firearms, despite being a felon, when he stated, "*I be having somebody grab [firearms] for me imma (I am a) felon.*"  PSR ¶ 37.

Finally, from September through November 2022, Barlow engaged in a series of conversations with his juvenile cousin related to an additional firearm. PSR ¶ 38-42.  In these threads, Barlow and the juvenile discussed the passing back and forth of a firearm.  *Id.*  Ultimately, they decided that the juvenile would pay Barlow for stealing a firearm and then Barlow would use the money to obtain an additional firearm. *Id.*

In sum, Barlow's offense involved three or more firearms for identical offenses.

He sold one firearm to the undercover, sought to obtain at least another, posted photos of himself with more, and admitted to possessing additional firearms. Therefore, the first prong of the relevant conduct analysis is satisfied. *See Kulick*, 629 F.3d at 173 (collecting cases and suggesting agreement with "the proposition that one count of unlawful possession of a firearm is similar to a second count of unlawful possession of a firearm, and is therefore relevant conduct"); *United States v. Garcia*, 946 F.3d 1191, 1204 (10th Cir. 2020) ("[I]n connection with a felon-in-possession crime, a defendant's additional instances of illegal firearm possession may be found to be not merely similar but identical to the offense of conviction. . . .")

*Second*, not only did Barlow repeat the same offense, but he did so with regularity. As discussed, Barlow delivered one firearm, openly discussed acquiring more, and published photos of firearms for the whole word to see. From 2022 through 2023, Barlow's intent never wavered – he was committed to illegally acquiring and selling more firearms. Thus, the regularity factor supports a determination that his conduct constitutes relevant conduct.

*Third*, Barlow's relevant conduct bore temporal proximity to the charged offense. From September 2022 through April 2023, a period of approximately seven months, Barlow engaged in the above relevant conduct. This short period of time establishes temporal proximity.

In *United States v. West*, 643 F.3d 102 (3d Cir. 2011), the Third Circuit held that "the five-month interval between [two gun possessions] met the requirement of temporal proximity." *Id.* at 111. The Court also noted that "courts have considered

as relevant conduct offenses that preceded the offense of conviction by as much as seventeen months." *Id.*; *see also*, e.g., *Kulick*, 629 F.3d at 172; *United States v. Wilson*, 106 F.3d 1140, 1144-1144 (3d Cir. 1997). Accordingly, the time-interval factor, like the other two factors, strongly supports including the offenses as relevant conduct.

In total, Barlow's relevant conduct involves three or more firearms. *First*, Barlow possessed the AR-15 the day prior to the sale with the undercover. *Second*, he sold the AR-15 to the undercover. *Third*, during the sale to the undercover, he admitted to possessing a firearm on his person. *Fourth*, after the sale, he told the undercover officer he had found an additional AR-15-style firearm for sale. *Fifth*, Barlow openly posted photos on social media with firearms. *And finally*, Barlow discussed the passing back and forth of a firearm with a juvenile. Thus, the Court should apply a two-level enhancement pursuant to USSG § 2K2.1(b)(1)(A), consistent with the Probation Office's assessment.

## II.   The § 3553(a) factors warrant a top-of-the guideline range sentence of 24 months' imprisonment

A sentence of 24 months' imprisonment is appropriate given the "nature and circumstances of the offense," the "history and characteristics of the defendant," and the needs to "afford adequate deterrence" and "promote respect for the law." 18 U.S.C. § 3553(a)(1)–(2).

Nature and Circumstances of the Offense:   Barlow sold a firearm to an undercover officer – an individual he had never met. His conduct is extremely serious. While no physical violence is alleged, the seriousness of the offense cannot be minimized. When one traffics firearms, especially a high-powered AR-15 capable

of quickly firing large volumes of ammunition, the likelihood that violence will occur as a result increases dramatically.

Gun violence is rampant in the District of Delaware. Thankfully, the AR-15 sold by Barlow ended up in law enforcement's hands. To protect the public, the Court must impose a sentence consistent with such a serious crime. The Defendant's firearm trafficking placed himself, and numerous others, at risk. Therefore, 24 months' imprisonment is sufficient but not greater than necessary.

<u>History and Characteristics of the Defendant</u>: This is Barlow's fourth felony conviction. This is also his third conviction for a firearms offense. Previously, in 2018, Barlow illegally possessed a firearm while in possession of controlled substances. PSR ¶¶ 67-71. ATF records confirmed that Barlow purchased the firearm eight days prior to his arrest and the firearm was used in a shots-fired incident just two days prior. *Id.*

In 2023, he was convicted again of possessing a firearm illegally. PSR ¶¶ 78-81. In that case, Barlow convinced Ronald Hovington to straw purchase a firearm on his behalf, due to his felony status. *Id.* Further, while on supervision, Barlow failed to report six times and incurred new misdemeanor arrests. PSR ¶ 81, 89-98.

In short, Barlow's fascination with firearms has not decreased. To the contrary, the severity of his offenses has escalated. He now stands before this Court facing a third felony firearm offense - an offense in which he illegally and brazenly sold a high-powered AR-15 rifle to an undercover officer.

The defense contends that Barlow's "poor decisions" were driven by his

substance abuse.  D.I. 23, p. 10.  This argument is unpersuasive.  Barlow openly and brazenly sold firearms and sought to procure more for sale.  He publicly posted photos brandishing and posing with firearms.  And he did so with the knowledge that he ran afoul of the law.  His decisions were not the product of substance abuse, but rather were knowing and intentional decisions.

Adequate Deterrence and Respect for the Law: A significant period of incarceration is necessary to protect society.  Barlow's adult life has been riddled with gun and drug arrests and violations of his probation.  Despite the State of Delaware's best efforts to rehabilitate him, Barlow now stands convicted of yet another gun offense.

However, despite his numerous arrests, he has not served long periods of incarceration.  PSR ¶¶ 59-98.  The recommended sentence would represent the longest period of incarceration served by Barlow.  *Id.*  Because short periods of incarceration have not adequately deterred the defendant, the recommended sentence is not just appropriate, but necessary to promote respect for the law.  It will also hopefully rehabilitate Barlow and protect the public from future harm by him.

\*        \*        \*

In sum, the government submits that a significant custodial sentence—specifically, a sentence of 24 months' incarceration—is sufficient but not greater than necessary to accomplish the goals of sentencing.

Respectfully submitted,

DAVID C. WEISS
United States Attorney

By: _____
Kevin P. Pierce
Assistant United States Attorney

Dated:  September 3, 2024